IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT YOUNGSTOWN

| | | |
|---|---|---|
| Jessica Myers | ) | CASE NO. |
| 11012 Canal Street | ) | |
| Kensington, Ohio 44427 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| VENTRA SALEM, LLC | ) | |
| 800 Pennsylvania Avenue | ) | **JURY DEMAND ENDORSED** |
| Salem, Ohio 44460 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| VENTRA SALEM, LLC | ) | |
| c/o Darlene Hart | ) | |
| 800 Pennsylvania Avenue | ) | |
| Salem, Ohio 44460 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jessica Myers, by and through undersigned counsel, as her Complaint against the

Defendant, states and avers the following:

## PARTIES

1. Myers is a resident of the City of Kensington, County of Columbiana, State of Ohio.

2. Ventra Salem, LLC (hereinafter "Ventra") is a foreign limited liability company that operated

   a business located at 800 Pennsylvania Avenue, Salem, Ohio 44460.

3. Ventra was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.

   126 § 12101 *et seq.*

4. Ventra was at all times hereinafter mentioned an employer within the meaning of R.C.

   § 4112.01 *et seq.*

## JURISDICTION & VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Myers is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.* and the Families First Coronavirus Response Act ("FFCRA").

6. All material events alleged in this Complaint occurred in County of Columbiana.

7. This Court has supplemental jurisdiction over Myers's state law claims pursuant to 28 U.S.C. § 1367 as Myers's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Myers filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00438 against Ventra.

10. On or about June 2, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Myers regarding the Charges of Discrimination brought by Myers against Ventra in EEOC Agency Charge No. 532-2021-00438.

11. Myers received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Myers has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Myers has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Myers is a former employee of Ventra.

15. On or about August 8, 2016, Myers began working for Ventra.

16. Ventra employed Myers as a Press Operator.

17. Myers had a strong history of performance with Ventra.

18. Myers consistently received pay raises.

19. Myers did not have any history of meaningful discipline.

20. In or around June 2019, Myers was diagnosed with liver cancer. ("Cancer").

21. The Cancer constituted a physical impairment.

22. Myers' Cancer substantially affected one or more of her major life activities, including working.

23. Defendant was not aware at the time of hiring Myers that she suffered from Cancer.

24. As a result of suffering from Cancer, Myers was disabled.

25. Alternatively, Defendant perceived Myers to be disabled.

26. Despite any real or perceived disability, Myers was capable of performing her essential job functions with or without reasonable accommodation(s).

27. Myers informed her supervisor, Mark Woffard, of her Cancer.

28. Ventra employed Woffard as a supervisor.

29. During all material events asserted herein, Woffard has and/or had authority to hire, fire, and/or discipline employees.

30. Woffard did not participate in the decision to hire Myers.

31. Myers occasionally had to miss work due to her doctor's appointments for her Cancer.

32. Every time Myers missed work due to her Cancer, she received an attendance point against her record.

33. Upon information and belief, Ventra terminates employment when an employee has 9 attendance points.

34. No one at Ventra ever entered an interactive conversation with Myers to determine a reasonable accommodation for her given her Cancer-related doctor's appointments.

35. There was an accommodation available that would not have posed an undue burden on Ventra.

36. On March 22, 2020, Governor Mike DeWine and the Ohio Department of Health issues a Stay-at-Home Order, ordering most people to remain home.

37. The Stay-at-Home Order was enforceable by state and local law enforcement pursuant to R.C. § 3701.352, "no person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event."

38. The Stay-at-Home Order was enforceable by state and local law enforcement pursuant to R.C. § 3701.56, "boards of health of a general or city health district, health authorities and officials, officers of state institutions, police officers, sheriffs, constables, and other officers and employees of the state or any county, city, or township, shall enforce quarantine and isolation orders, and the rules the department of health adopts."

39. Ohio has a strong public policy to stop the spread of the COVID-19 virus.

40. Per the Stay-at-Home Order, individuals who have COVID-19 virus symptoms should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

41. Per the Stay-at-Home Order, individuals who have contact with an individual who is known to have the COVID-19 virus should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

42. As a result of the COVID-19 pandemic, Ventra laid off their employees on April 4, 2020.

43. When Ventra laid off their employees, they used up the employee's PTO.

44. When Ventra laid off their employees, they fought against allowing their employees to obtain COVID-19-related unemployment compensation.

45. Ventra brought their employees back on or about May 17, 2020.

46. As a result of the COVID-19 pandemic, Ventra began following new safety protocols. ("COVID Protocols").

47. The COVID Protocols involved taking the employee's temperature before they entered the workplace.

48. The COVID Protocols involved sending employees home if they had an elevated temperature.

49. The COVID Protocols involved only allowing employees back to work after they demonstrated COVID-19 symptoms when they had a doctor's release.

50.  On or about June 1, 2020, Myers arrived for her shift and followed the COVID Protocols.

51. On June 1, 2020, Myers' temperature read 101.6 degrees.

52. On June 1, 2020, Myers demonstrated symptoms consistent with the COVID-19 virus. ("Symptoms").

53. On June 1, 2020, per the COVID Protocols, Myers was sent home.

54. By exhibiting Symptoms consistent with COVID-19, Myers was eligible for time off work under the Families First Coronavirus Response Act ("FFCRA").

55. On or about June 2, 2020, Myers went to her doctor to seek treatment and diagnosis for the Symptoms.

5

56. At the June 2 doctor's appointment, Myers was diagnosed with a severe sinus infection and strep throat.

57. At the time of her June 2 doctor's appointment, COVID-19 tests were only administered upon admission to the hospital.

58. At the June 2 doctor's appointment, Myers was not tested for COVID-19.

59. As a result of the June 2 doctor's appointment, Myers was given a note allowing her to return to work on June 6 if she did not have a fever.

60. After her June 2 doctor's appointment, Myers called Tammy Last Name Unknown, a representative of HR, to alert HR of her diagnosis. ("Call with Tammy LNU").

61. During all material events asserted herein, Tammy LNU has and/or had authority to hire, fire, and/or discipline employees.

62. Tammy LNU did not participate in the decision to hire Myers.

63. During the Call with Tammy LNU, Myers informed Tammy LNU that her doctor ordered her out of work until June 6, 2020.

64. During the Call with Tammy LNU, Tammy LNU informed Myers she needed to bring in the excuse from the doctor.

65. During the Call with Tammy LNU, Myers asked Tammy LNU if she needed to call in every day.

66. During the Call with Tammy LNU, Tammy LNU assured Myers she did not have to call in every day as she would mark down that Myers was absent due to sickness.

67. Ventra was closed on June 6, 2020.

68. Myers was not scheduled to work on June 6, 2020.

69. The first day Myers was scheduled to work after she was cleared to return to work was June 7, 2020.

70. On June 7, 2020, Myers reported to work with the release from her doctor.

71. On June 7, 2020, Myers turned in the release from her doctor stating she could come back to work.

72.  On June 7, 2020, Myers was met by Sarah Last Name Unknown, the Midnight Supervisor.

73. During all material events asserted herein, Sarah LNU has and/or had authority to hire, fire, and/or discipline employees.

74. Sarah LNU did not participate in the decision to hire Myers.

75. When Sarah LNU met Myers on June 7, Sarah LNU informed Myers that Ventra was terminating Myers's employment.

76. When Sarah LNU informed Myers that Ventra was terminating her employment, Sarah LNU explained the reason for termination was because Myers had received too many attendance points.

77. The attendance points that Myers received had to do with time she took off due to the COVID Protocol.

78. The attendance points that Myers received were a result of her following her doctor's orders.

79. The attendance points that Myers received should have been covered by the FFCRA.

80. The purported reason for termination is pretext for disability discrimination.

81.  The purported reason for termination is a violation of the FFCRA.

82. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

83. Defendant has used the Progressive Discipline Policy when disciplining non-disabled employees.

84. Defendant has used the Progressive Discipline Policy when disciplining employees who were not eligible to receive leave under the FFCRA.

85. Under the Progressive Discipline Policy, Myers had not received any meaningful discipline.

86. Under the Progressive Discipline Policy, Myers had not received any written warnings.

87. Under the Progressive Discipline Policy, Myers had not been suspended.

88. Defendant skipped steps under the Progressive Discipline Policy when they terminated Myers's employment.

89. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

90. Skipping steps under the Progressive Discipline Policy is an adverse action.

91. Terminating Myers's employment was an adverse employment action.

92. Terminating Myers's employment was an adverse action.

93. Defendant knowingly skipped steps under the Progressive Discipline Policy when they terminated Myers's employment.

94. Defendant intentionally skipped steps under the Progressive Discipline Policy when they terminated Myers's employment.

95. Defendant willfully skipped steps under the Progressive Discipline Policy when they terminated Myers's employment.

96. Defendant knowingly committed an adverse employment action against Myers.

97. Defendant intentionally committed an adverse employment action against Myers.

98. Defendant willfully committed an adverse employment action against Myers.

99. Defendant knowingly committed an adverse action against Myers.

100. Defendant intentionally committed an adverse action against Myers.

101. Defendant willfully committed an adverse action against Myers.

102. Defendant knowingly terminated Myers's employment.

103. Defendant intentionally terminated Myers's employment.

104. Defendant willfully terminated Myers's employment.

105. The above facts demonstrate Defendant engaged in a pattern and practice of disability discrimination.

106. There was a causal connection between Myers's Cancer and Defendant's termination of Myers's employment.

107. There was a causal connection between Myers's COVID-19 Symptoms and Defendant's termination of Myers's employment.

108. There was a causal connection between Myers's disability and Defendant's termination of Myers's employment.

109. There was a causal connection between Myers's eligibility for leave under the FFCRA and Defendant's termination of Myers's employment.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. 126 § 12101 *et seq.*

110. Myers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Myers suffers from Cancer.

112. Myers suffered from symptoms consistent with the COVID-19 virus.

113. Myers's Cancer substantially impaired one or more of her major life activities including working.

114. Myers is disabled.

115. In the alternative, Ventra perceived Myers as being disabled.

116. Myers's conditions constituted a physical impairment.

117. Ventra treated Myers differently than other similarly-situated employees based on her disabling conditions.

118. Alternatively, Ventra treated Myers differently than other similarly-situated employees based on her perceived disabling condition.

119. On or about June 7, 2020, Defendant terminated Myers' employment without just cause.

120. Defendant terminated Myers's employment based her disability.

121. Alternatively, Defendant terminated Myers's employment based her perceived disability.

122. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Myers based on her disability.

123. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*.  when it discharged Myers based on her perceived disability.

124. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Myers based on her disabling condition.

125. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Myers based on her perceived disabling condition.

126. Myers suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

127. As a direct and proximate result of Defendant's conduct, Myers suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 *et seq.*

128. Myers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Myers suffers from Cancer.

130. Myers suffered from symptoms consistent with the COVID-19 virus.

131. Myers's Cancer substantially impaired one or more of her major life activities including working.

132. Myers is disabled.

133. In the alternative, Ventra perceived Myers as being disabled.

134. Myers's conditions constituted a physical impairment.

135. Ventra treated Myers differently than other similarly-situated employees based on her disabling conditions.

136. Alternatively, Ventra treated Myers differently than other similarly-situated employees based on her perceived disabling condition.

137. On or about June 7, 2020, Defendant terminated Myers' employment without just cause.

138. Defendant terminated Myers' employment based her disability.

139. Alternatively, Defendant terminated Myers' employment based her perceived disability.

140. Defendant violated R.C. §4112.02 when it discharged Myers based on her disability.

141. Alternatively, Defendant violated R.C. §4112.02 when it discharged Myers based on her perceived disability.

142. Defendant violated R.C. §4112.02 by discriminating against Myers based on her disabling condition.

143. Alternatively, Defendant violated R.C. §4112.02 by discriminating against Myers based on her perceived disabling condition.

144. Myers suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

145. As a direct and proximate result of Defendant's conduct, Myers suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

146. Myers informed Ventra of her disabling condition.

147. Myers requested accommodations from Ventra to assist with her disabilities including time off work.

148. Myers' requested accommodations were reasonable.

149. There was an accommodation available that would have been effective and would have not posed an undue hardship to Ventra.

150. Ventra failed to engage in the interactive process of determining whether Myers needed an accommodation.

151. Ventra failed to provide an accommodation.

152. Ventra violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

153. As a direct and proximate result of Ventra's conduct, Myers suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. § 4112.01 *et seq.*

154. Myers informed Defendant of her disabling condition.

155. Myers requested accommodations from Defendant to assist with her disabilities including time off work.

12

156. Myers's requested accommodations were reasonable.

157. There was an accommodation available that would have been effective and would have not posed an undue hardship to Ventra.

158. Defendant failed to engage in the interactive process of determining whether Myers needed an accommodation.

159. Defendant failed to provide an accommodation.

160. Defendant violated R.C. §4112.02 by failing to provide Myers a reasonable accommodation.

161. Myers suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

162. As a direct and proximate result of Defendant's conduct, Myers suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT V: FFCRA VIOLATIONS**

163. On April 1, 2020, the Families First Coronavirus Response Act ("FFCRA") went into effect, requiring paid time off for employees suffering form COVID-19 symptoms.

164. Section 5104 of the FFCRA provides that it "shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who (1) takes [EPSL] leave…."

165. The FFCRA applied to employers with less than 500 employees.

166. Ventra employs less than 500 employees.

167. Ventra is/was a covered employer under the FFCRA.

168. Myers experienced symptoms consistent with COVID-19.

169. Defendant did not provide Myers with two weeks or 80 hours of paid sick leave benefits.

170. Defendant marked Myers' absences due to her Symptoms against her record.

13

171. Defendant terminated Myers' employment due to absences which were covered under the FFCRA.

172. Defendant has violated the FFCRA.

173. As a direct and proximate result of Defendant's conduct, Myers suffered and continues to suffer damages, including economic and emotional distress damages.

**COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

174. Myers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. On March 22, 2020, Governor Mike DeWine and the Ohio Department of Health issues a Stay-at-Home Order, ordering most people to remain home.

176. The Stay-at-Home Order was enforceable by state and local law enforcement pursuant to R.C. § 3701.352, "no person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event."

177. The Stay-at-Home Order was enforceable by state and local law enforcement pursuant to R.C. § 3701.56, "boards of health of a general or city health district, health authorities and officials, officers of state institutions, police officers, sheriffs, constables, and other officers and employees of the state or any county, city, or township, shall enforce quarantine and isolation orders, and the rules the department of health adopts."

178. Ohio has a strong public policy to stop the spread of the COVID-19 virus.

179. Per the Stay-at-Home Order, individuals who have COVID-19 virus symptoms should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

180. Per the Stay-at-Home Order, individuals who have contact with an individual who is known to have the COVID-19 virus should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

181. On June 1, 2020, Myers suffered from symptoms consistent with COVID-19.

182. On June 2, 2020, Myers sought medical treatment related to her symptoms that were consistent with COVID-19.

183. Myers' doctor cleared her to return to work as of June 6, 2020.

184. Immediately after returning to work from seeking treatment related to experiencing symptoms consistent with COVID-19, Defendant terminated Myers' employment.

185. Defendant's termination of Myers jeopardizes these public policies.

186. Defendant's termination of Myers was motivated by conduct related to these public policies.

187. Defendant had no overriding business justification for terminating Myers.

188. As a direct and proximate result of Defendant's conduct, Myers has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Myers demands from Defendant the following:

(a) Issue an order requiring Ventra to restore Myers to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Myers for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Myers's claims as allowable

under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Fred M. Bean*

Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  fred.bean@spitzlawfirm.com
        taurean.shattuck@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Jessica Myers demands a trial by jury by the maximum number of jurors permitted.

/s/ *Fred M. Bean*
_____

Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**

17